# EXHIBIT 67

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division



|  |  |  |
|---|---|---|
| CORY JOHNSON, | ) | |
| | ) | |
| Petitioner, | ) | Crim. No. 3:92CR68 |
| v. | ) | |
| | ) | Civil No. 3:97CV895 |
| SAMUEL PRUETT, WARDEN, | ) | |
| | ) | |
| Mecklenburg Correctional | ) | |
| Center, Boydton, Virginia, | ) | |
| Respondent. | ) | |

**MEMORANDUM IN SUPPORT OF**

**INITIAL PETITION FOR WRIT OF HABEAS CORPUS**

**PURSUANT TO 28 U.S.C. SECTION 2255**

BARBARA L. HARTUNG
VSB 38062
1001 East Main Street
Suite 504
Richmond, VA  23219
(804) 649-1088

EDWARD E. SCHER
VSB 23064
Thorsen Marchant &
  Scher, LLP
316 West Broad Street
Richmond, VA  23220-4219
(804) 644-0711

Counsel for Cory Johnson

June 15, 1998

TABLE OF CONTENTS

Page

A.   JURISDICTIONAL STATEMENT . . . . . . . . . . . .          1

B.   PARTIES  . . . . . . . . . . . . . . . . . . . .          1

C.   PROCEDURAL HISTORY . . . . . . . . . . . . . . .          2

D.   OVERVIEW OF GROUNDS COMPELLING
     THE ISSUANCE OF THE WRIT   . . . . . . . . . . .          4

     1.   No Pretrial Investigation  . . . . . . . .           4

     2.   Ineffective Voir Dire and Prejudicial Publicity     5

     3.   Insufficient Proof of CCE Supervision  . .          6

     4.   Prosecutorial Misconduct . . . . . . . . .          7

     5.   Counsels' Errors At Penalty Phase  . . . .          9

E.   GROUNDS FOR RELIEF . . . . . . . . . . . . . . .         12

  I. THE PROSECUTION KNOWINGLY OR NEGLIGENTLY USED
     FALSE EVIDENCE TO CREATE THE ILLUSION THAT
     JOHNSON AND HIS CO-DEFENDANTS WERE LEADERS OF
     A HIGHLY ORGANIZED CONTINUING CRIMINAL
     ENTERPRISE HAVING ITS ROOTS IN NEW YORK
     AND/OR NEW JERSEY  . . . . . . . . . . . . . .          12

     A.   The Government's Strategy . . . . . . . .           14

     B.   Greg Scott's Trial Testimony Linking Johnson
          And His Co-defendants To The New York Boyz Was
          False, And The Government Knew Or Should Have
          Known It Was False . . . . . . . . . . . .         17

     C.   Maurice Saunders' Trial Testimony Linking
          Tipton To "Light" And To Large Sums Of Money Was
          False, And The Government Knew Or Should Have
          Known It Was False . . . . . . . . . . . .         26

 II. THE EVIDENCE WAS LEGALLY INSUFFICIENT TO CONVICT
     JOHNSON AS A SUPERVISOR OF A CONTINUING CRIMINAL
     ENTERPRISE UNDER 21 U.S.C. SECTION 848 . . . . .        31

     A.   The CCE Supervision Element: Governing
          Principles  . . . . . . . . . . . . . . .          33

1.  The Fourth Circuit Does Not Require Proof
    Of Management By The CCE  Defendant In All
    Cases, While Other Circuits Always Require
    Proof Of A Management Relationship . . .    34

2.  Proof Of A Buyer-Seller Relationship In
    A Drug Distribution System Does Not
    Establish The Supervision Element . . .    36

3.  The Government Was Required To Prove
    That Johnson Himself Satisfied the
    Supervision Element . . . . . . . . . .    38

4.  A CCE Conviction Must Be Vacated Where
    (As Happened Here) The Court Does Not
    Properly Instruct The Jury After The
    Government Introduces Evidence Of
    Individuals Who, As A Matter Of Law, Are
    Incapable Of Counting As "Supervisees." .    39

B.  The Government's Effort To Prove
    The Supervision Element . . . . . . . . . .    42

1.  Many Of Alleged "Supervisees" Were
    Individuals Who, As A Matter Of Law,
    Were Not Capable Of Being Supervisees,
    And Proper Jury Instructions Were Not
    Given; Under *Barona* and *Jerome*, The CCE
    Convictions Must Be Vacated . . . . . .    43

2.  There Is No Admissible Evidence
    Demonstrating That Johnson Supervised
    Five Individuals Within The Meaning
    Of The CCE Statute  . . . . . . . . . .    49

    a.  The Government Relied Principally
        On The Conclusory Terms "Worker" and
        "Employee" To Prove Supervision; Such
        Terms Misled The Jury And Prejudiced
        Johnson And The Other Defendants . . .    49

    b.  The So-Called Evidence Of
        "Supervision" Was Largely Without A
        Foundation Of Personal Knowledge And
        Was Inadmissible Under FRE 602 . . . .    56

    c.  Even The Evidence Cited By The
        Government On Appeal Does Not
        Establish That Johnson Supervised
        Five Individuals . . . . . . . . . . .    56

ii

C.   Habeas Claims Related To the CCE
     Supervision Element . . . . . . . . . . . . . .   61

     1.   The Jury Was Not Properly Instructed As
          To The Supervision Element . . . . . . . .   61

          a.   Buyer-seller relationship . . . . . .   61

          b.   Individuals not capable of
               being CCE supervisees   . . . . . . .   61

          c.   Management requirement  . . . . . . .   62

     2.   There Was Insufficient Evidence To
          Support The Supervision Element  . . . . .   62

     3.   Prosecutorial Misconduct Relating To
          The Supervision Element . . . . . . . . .   62

          a.   Improper use of unsupported,
               ambiguous testimony . . . . . . . . .   63

          b.   Improper argument concerning the
               supervision element . . . . . . . . .   63

     4.   Ineffective Assistance Of Counsel At Trial
          And Appeal . . . . . . . . . . . . . . . .   64

          a.   Counsel Could Have And Should Have
               Shown That Johnson Was Incapable Of
               Being A Supervisor Or At Least Not
               Likely To Be A Supervisor . . . . . .   65

          b.   Counsel Failed To Object To Repeated,
               Improper Evidence . . . . . . . . . .   66

          c.   Counsel Failed To Demonstrate That
               The Proof Against Johnson Did Not
               Establish Five Supervisees . . . . .   71

          d.   Counsel Failed To Object To The
               Prosecutor's Closing Argument On The
               Supervision Element . . . . . . . . .   71

          e.   Counsel Failed To Request Proper Jury
               Instructions On The Supervision Element
               Of The CCE Statute . . . . . . . . .   71

          f.   Trial Counsel Failed To Stop The
               Onslaught Of Prosecutorial Misconduct . 72

g.    Counsel Failed To Seek Relief Available
Under *Barona* and *Jerome* . . . . . . . . 72

h.    Counsel Should Have Pursued Each Of
The CCE Supervision Issues Above  . . . 72

III.  JOHNSON IS ACTUALLY INNOCENT OF THE CCE CONVICTIONS . 73

IV.   TRIAL AND APPELLATE COUNSEL PROVIDED
INEFFECTIVE ASSISTANCE IN VIOLATION
OF THE SIXTH AMENDMENT . . . . . . . . . . . . . . . . . 75

A.    GUILT PHASE INEFFECTIVENESS . . . . . . . . . . . 77

1.    Defense Counsel Failed To Request The
Appointment Of An Investigator Pursuant
To 21 U.S.C. Section 848(q) And Failed
To Conduct An Adequate Factual
Investigation . . . . . . . . . . . . . . . . . 77

2.    Defense Counsel Failed To Move For A
Change Of Venue Despite Inflammatory
Media Coverage About The Charges
And The Defendants . . . . . . . . . . . . . . 81

3.    Defense Counsel Failed to Request <u>Voir Dire</u>
Pursuant to *Morgan v. Illinois*,
504 U.S. 719 (1992) . . . . . . . . . . . . . 88

4.    Defense Counsel Failed To Object
To The Prosecution's Strikes
Against Women Jurors . . . . . . . . . . . . . 95

5.    Defense Counsel Failed To Object To
Johnson's Absence From <u>Voir Dire</u>
And Johnson Lost His Right To
Participate In Jury Selection . . . . . . . . 96

6.    Defense Counsel Failed To Challenge The
Government's Evidence That Johnson Was
A Supervisor Of A CCE  . . . . . . . . . . . . 105

7.    Defense Counsel Failed To Object To Or
Ask For Proper Jury Instructions On The
Substantive Counts Charged . . . . . . . . . 106

a.    Defense Counsel Failed To Request A
Unanimity Instruction On The CCE
Elements . . . . . . . . . . . . . . . 106

b. The Jury Was Not Properly Instructed As To The Supervision Element Of The CCE Charges . . . . . . . . . . . . 106

8. Defense Counsel Failed To Object To Improper And Highly Prejudicial Conduct And Arguments By The Prosecutors Throughout Johnson's Capital Trial . . . . . . . . . . . . . 107

B. COUNSEL PROVIDED INEFFECTIVE ASSISTANCE AT THE SENTENCE PHASE . . . . . . . . . . . . 108

1. Defense Counsel Failed To Argue That Johnson's Mental Ability Was Not Accurately Reflected By His I.Q. Test And, In Fact, Was Below 77 . . . . 108

2. Defense Counsel Failed To Present Evidence Of Johnson's Prison Conditions If Sentenced To Life . . . . . . 111

C. INEFFECTIVE ASSISTANCE ON APPEAL . . . . . . . . . 114

D. THE CUMULATIVE EFFECT OF COUNSELS' ERRORS PREJUDICED JOHNSON UNDER STRICKLAND . . . . . . . 116

V. PROSECUTORIAL MISCONDUCT DEPRIVED JOHNSON OF HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL . . . . . . . 120

A. The prosecutors misled the jury by vouching, in inflammatory terms, to their personal belief in Johnson's guilt and the veracity of witnesses . . . . . . . . . . . . . . . . 121

B. The prosecutors introduced inadmissible evidence suggesting that Johnson and the other defendants threatened the lives of witnesses . . . . . . . . . . . . 125

C. The prosecutors misled the jury into believing it had a *duty* to convict and to impose a death sentence . . . . . . . . . . . . 126

D. The prosecutors misled the jury by making misleading and inflammatory arguments to the jury, unsupported by the evidence, regarding the conditions Johnson would face if given a life sentence . . . . . . . . . 128

v

E.  The prosecutors improperly emphasized
    that Johnson and the other defendants
    did not testify . . . . . . . . . . . . . . . . . . . 129

F.  Prosecutors suggested that a Government
    witness had passed a polygraph test . . . . . . . 132

G.  The Government prosecutors improperly
    treated Johnson and the other defendants
    as a group, rather than as individuals . . . . . . 132

H.  The Prosecutors Improperly Argued That
    Sentencing Should Be Based On Deterrence . . . . . 135

I.  Misconduct relating to testimony
    without foundation . . . . . . . . . . . . . . . . . 135

J.  The prosecutors misled the jury by suggesting
    that they had not influenced witnesses to use
    the terms "partner," "worker," and "employee." . . 141

K.  The Government Excluded Women From The Jury
    In Violation of *J.E.B. v. Alabama*,
    114 S. Ct. 1419 (1994) . . . . . . . . . . . . . . . 141

L.  Misconduct relating to the CCE
    supervision element . . . . . . . . . . . . . . . . 141

VI.  THE PROSECUTION IMPROPERLY DISCRIMINATED AGAINST
     WOMEN IN SELECTING THE JURY . . . . . . . . . . . . 142

VII.  JUROR MISCONDUCT VIOLATED JOHNSONS' RIGHTS
      TO AN IMPARTIAL JURY AND TO DUE PROCESS OF LAW . . . . 144

VIII.  JOHNSON WAS DENIED HIS STATUTORY AND CONSTITUTIONAL
       RIGHT TO JUSTICE WITHOUT DISCRIMINATION . . . . . . . 145

IX.  SECTION 848'S DELEGATION OF AUTHORITY TO
     PROSECUTORS TO CREATE NON-STATUTORY AGGRAVATORS
     IS AN UNCONSTITUTIONAL DELEGATION OF AUTHORITY
     THAT VIOLATES THE SEPARATION OF POWERS . . . . . . . 147

X.  JOHNSON ADOPTS BY REFERENCE THOSE CLAIMS
    PRESENTED BY HIS CO-PETITIONERS, TIPTON AND ROANE,
    TO THE EXTENT THAT THEY ARE APPLICABLE TO HIM . . . . 161

RELIEF REQUESTED . . . . . . . . . . . . . . . . . . . . 162

prejudiced as there was a reasonable probability of a different result at the guilt phase.

        8.    Defense Counsel Failed To Object To Improper And Highly Prejudicial Conduct And Arguments By The <u>Prosecutors Throughout Johnson's Capital Trial</u>

During the course of Johnson's trial, the prosecutors engaged in a variety of improper and highly prejudicial conduct. The prosecutors misled the jury by vouching, in inflammatory terms, as to their personal belief in Johnson's guilt and the veracity of witnesses. They introduced inadmissible evidence suggesting that Johnson and the other defends had threatened the lives of witnesses. The prosecutors misled the jury into believing it had a duty to convict and to impose death sentences. The prosecutors misled the jury by making misleading and inflammatory arguments, unsupported by the evidence, regarding the conditions Johnson would face if given a life sentence. The prosecutors improperly emphasized that Johnson and the other defendants did not testify. They suggested that a Government witness passed a polygraph test. The prosecutors improperly treated Johnson and the other defendants as a group, rather than as individuals. They improperly argued that sentencing should be based on deterrence. The prosecutors presented testimony lacking proper foundation. They presented improper testimony about the CCE supervision element and the use of key terms. The prosecutors excluded women from the jury. This misconduct is set forth in detail at Claim V, <u>infra</u>, and is incorporated by

107

reference herein.  With few exceptions, defense counsel failed to object to the prosecutors' repeated, improper behavior.  Defense counsel's performance in this regard was well below that of a reasonably competent counsel, and Johnson was prejudiced, for the reasons set forth in Claim V, as there was a reasonable probability of a different result at the guilt and sentence phases.

B.    COUNSEL PROVIDED INEFFECTIVE ASSISTANCE AT THE SENTENCE PHASE

1.    DEFENSE COUNSEL FAILED TO ARGUE THAT JOHNSON'S MENTAL ABILITY WAS NOT ACCURATELY REFLECTED BY HIS I.Q. TEST AND, IN FACT, WAS BELOW 77.

Johnson's scores during his teen years placed him within the mentally retarded range, and he scored only slightly higher in tests prior to his capital trial.  Under federal law, a mentally retarded defendant cannot be executed.  21 U.S.C. sec. 848(1); 18 U.S.C. sec. 3596(c)[Added 9/13/94].  In his opening statement at the sentencing phase, defense counsel harmed Johnson's mitigation case by conceding that Johnson was not mentally retarded.  Counsel stated:

> The law states that mentally retarded persons cannot be executed.  And the reasons that they are excluded is because the law recognizes that mentally retarded persons are not totally and completely blameworthy. They are not fully responsible for their actions.
>
> Now, I'm not intending to suggest at this juncture or any other juncture that Cory Johnson is mentally retarded.

JA. at 4372.

> In this case, Cory Johnson, as I said is not mentally retarded.  But he has substantial mental, intellectual deficits that he has been plagued with his entire life.

> His IQ is within two points of being classified by the law [as] mentally retarded, and therefore, legally not executable. . . . He has an IQ of 77.

JA. at 4374.

Contrary to counsel's concessions to the jury, Johnson's intelligence was probably lower than his test scores indicated. Studies demonstrate that IQ determination has significant variables. Defense counsel and his expert could have and should have used widely accepted studies to argue that Johnson in fact had a lower IQ than the pretrial testing revealed. Such evidence and argument would have created a reasonable doubt in the minds of the jurors. This argument would likely have persuaded one or more jurors that a life sentence, not death, was the appropriate punishment where the execution of the mentally retarded is prohibited under federal law. Instead, counsel wrongly conceded a critical fact issue.

The Wechler Adult Intelligence Scale Revised (WAIS-R) is one of the most widely used IQ tests. This was the test given to Johnson. Studies reveal that IQ measurement on this test increases over time. The phenomenon of "IQ inflation" is explained as follows:

> Work by James Flynn (1984, 1988) has indicated that there is a real phenomenon of IQ gains over time. Individuals appear to gain approximately 3-5 IQ points over a 10 year period. Since the WAIS-R was published in 1981 and the data was collected a year prior to the publication, this inflation factor could mean that the average IQ could be as high as 105-107 points rather than the accepted value of 100.

See Ex. 7 at 2.

109

Dr. Dewey Cornell, an expert assigned by the court, administered the WAIS-R to Johnson on October 1992. Johnson's overall IQ score was 77 which placed him in the 6th percentile and in the borderline mentally retarded range. The test Johnson took was published in 1981 and was based on data collected one year before. Thus, the normative data was twelve years old when Johnson took the test in 1992. Johnson's score of 77 was therefore inflated by at least 3-5 points and possibly more. Allowing for the inflation effect, Johnson's score was actually in the 72-74 range or lower, placing him within the recognized range of mental retardation. JA at 4515, 4517 (Dr. Cornell: 70-75 I.Q. can be considered in the range of mental retardation). This adjusted score would be consistent with his prior, lower test results during his teens.

Low intelligence was a mitigating factor found by the jurors. Eight jurors found that Johnson's IQ was 77. JA. 433. This was one of eighteen mitigating factors found by the jurors. Given the wealth of mitigating evidence found by the jurors, defense counsel missed a critical chance to create reasonable doubt in the minds of the jurors concerning Johnson's mental capabilities. If only one juror concluded that Johnson was in fact mentally retarded, then that juror may well have concluded that a sentence of life rather than death was appropriate. Counsel was ineffective for failing to present this evidence. See Emerson v. Gramley, 91 F.3d 898 (7th Cir. 1996)(counsel ineffective for failing to present mitigation evidence, including

110

fact that defendant had diminished IQ); Henricks v. Calderon, 70 F.3d 1032 (9th Cir. 1995), cert. denied, 116 S. Ct. 1335 (1996)(counsel ineffective for failure to adequately prepare and present statutory mitigation evidence even where defense expert was presented); Jones v. Thigpen, 788 F.2d 1101 (5th Cir. 1986), cert. denied, 479 U.S. 1087 (1987)(counsel ineffective during sentencing phase where he failed to present evidence that defendant was mentally retarded).

Johnson was certainly prejudiced given the wealth of mitigation evidence found by the jurors. There was a reasonable probability of a different result at sentencing if the jurors had heard this additional evidence. See Blanco v. Singletary, 943 F.2d 1477, 1505 (11th Cir. 1991)(where some jurors inclined to mercy absent any mitigating evidence and such evidence was available but not presented, there was a reasonable probability of a life sentence); Jackson v. Herring, 42 F.3d 1350 (11th Cir. 1995)(counsel failed to present persuasive mitigation evidence). The writ should be granted on the sentence.

2.  DEFENSE COUNSEL FAILED TO PRESENT EVIDENCE OF JOHNSON'S PRISON CONDITIONS IF SENTENCED TO LIFE

The public, and jurors, assume that prison conditions are unduly comfortable for inmates. Effective capital counsel must provide jurors with accurate information. The jurors were presented with two alternative punishments -- death or life without parole. While the jurors clearly understood the first alternative, they received no evidence concerning the second.

111

Defense counsel failed to portray the bleak existence facing Johnson if the jurors sentenced him to life imprisonment. Counsels' omission was particularly harmful in light of the prosecutor's summation at the sentencing phase. Accurate information is essential in any capital case. It was especially so here as the prosecutor argued without any basis in fact:

> Ask yourself, should they be punished beyond incarceration? I'm not telling you incarceration is nice and a lifetime of incarceration is not punishment. But think about each and every day of their existence in jail. They will wake up, bathe, be fed. They will be able to watch TV, read books. They will be able to use the telephone to talk to their loved ones.

JA. 4729 (Tr. 3904). Johnson's counsel objected on the grounds that these facts were not in the record, and the Court sustained the objection. Id. However, the jury was never told about the realities of a life sentence.

Trial counsel should have demonstrated this point in at least two different ways. First, they should have called an inmate who was serving a life sentence in a maximum security prison to testify about the day to day living conditions. See Ex. 8. That inmate could have described the small cell used to house two inmates, and the minimal furnishings. Jurors would have learned that inmates spend much of their time locked in their cell, that "lockdowns" can last for days, that searches (including strip searches) occur at random, and that inmates have no privacy in any aspect of prison life. Ordinary events such as bathing are strictly limited and regulated, and many prisons have no air conditioning. Access to television is restricted. Some

112

reading materials are prohibited.  The jurors would have heard about prison violence, gangs, and the constant threats to personal safety.

Second, counsel should have called a corrections expert, such as a former or current warden or prison administrator.  Ex. 9.  A corrections expert could describe the conditions in a maximum security prison including the limitations on recreation, personal visits, medical care, and personal correspondence.  In some "super" maximum prisons, inmates spend 23 hours a day in their cells and never see the outside.

Testimony on life in a maximum security prison would have refuted the prosecution's argument that Johnson would be facing a relatively easy life if given a life sentence.  The jurors should have heard about the realities of prison life.  Where only one vote could defeat a death sentence, counsels' failure to present testimony about actual prison conditions constituted ineffective assistance of counsel and Johnson was prejudiced.  In any event, after the prosecutor made his improper statements to the jury, trial counsel should have sought leave to introduce evidence that would correct the false impression created by the prosecutor.

Johnson was prejudiced by these omissions as there was a reasonable probability of a different result on sentencing if this testimony had been presented.

113

CERTIFICATION

I hereby certify that one copy of the attached Memorandum In Support Of Initial Petition For Writ Of Habeas Corpus Pursuant To 28 U.S.C. Section 2255 was mailed on June 15, 1998, to counsel for the Respondent:

> Robert J. Erickson
> United States Department of Justice
> Room 6102, Patrick Henry Building
> 601  D. Street, N.W.
> Washington, DC  20530
> (202) 514-2841

_____
Barbara L. Hartung