# EXHIBIT 72

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION



MAY - 3 2000

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

CORY JOHNSON

　　　　　　　　　　　　　　　Petitioner.

　　　　v.

SAMUEL PRUETT, WARDEN

　　　　　　　　　　　　　　　Respondent.

Civil Action Number 3:97CV895

Criminal Action Number 3:92CR68

RICHARD TIPTON

　　　　　　　　　　　　　　　Petitioner.

　　　　v.

RONALD ANGELONE

　　　　　　　　　　　　　　　Respondent.

Civil Action Number 3:98CV361

Criminal Action Number 3:92CR68

JAMES H. ROANE, JR.

　　　　　　　　　　　　　　　Petitioner.

　　　　v.

UNITED STATES

　　　　　　　　　　　　　　　Respondent.

Civil Action Number 98CV360

Criminal Action Number 3:92CR68

## MEMORANDUM OPINION

Richard Tipton, Cory Johnson, and James Roane each have filed a motion to vacate, set

aside or correct sentence under 28 U.S.C. § 2255, and in conjunction therewith, have filed a joint

1

803

motion for leave to take discovery. For the reasons stated herein, the Court GRANTS in part and DENIES in part Petitioners' Joint Motion for Leave to Take Discovery.

## I. BACKGROUND

In 1993, Petitioners were tried by a jury on a 33-count indictment charging them with numerous federal crimes, most prominently, murder while engaged in a continuing criminal enterprise ("CCE"). The jury returned verdicts of guilty and, after a separate penalty hearing, recommended that Tipton, Johnson, and Roane receive the death penalty. This Court sentenced each to death in accordance with the jury's instructions. Petitioners appealed, and the United States Court of Appeals for the Fourth Circuit affirmed in all relevant respects. United States v. Tipton, et al., 90 F.3d 861 (4th Cir. 1996). The United States Supreme Court denied certiorari. Petitioners filed timely motions for relief under 28 U.S.C. § 2255 arguing, among other things, that the Government committed numerous acts of prosecutorial misconduct by (1) offering testimony that it knew to be false or should have known to be false, (2) misrepresenting evidence, (3) concealing exculpatory evidence, (4) improperly purchasing testimony in violation of 18 U.S.C. § 201(c), and (5) improperly discriminating against women in selecting the jury. Additionally, Petitioners contend that they received constitutionally ineffective assistance of counsel, the evidence at trial was insufficient to support their continuing criminal enterprise ("CCE") convictions, and that there was possible jury taint.

Petitioners also filed a Joint Motion for Leave to Take Discovery, in which they seek this Court's permission to conduct discovery because, as they contend, their filings with the Court establish that Petitioners are entitled to discovery and an evidentiary hearing on certain claims.

## II. LEGAL STANDARD

Federal habeas relief exists to correct constitutional defects. Royal v. Taylor, 188 F.3d 239, 243 (4th Cir. 1999). In submitting a petition for habeas relief under 28 U.S.C. § 2255, 28 U.S.C. § 2254 Rule 6(a) provides:

> A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.

The Supreme Court determined, in Harris v. Nelson, 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed. 2d 281 (1969), and in its progeny, Bracy v. Gramley, 520 U.S. 599, 117 S.Ct. 1793 (1997), that "good cause" for discovery exists when a petition for habeas corpus establishes a prima facie case for relief. See Harris v. Nelson, 394 U.S. at 290, 117 S. Ct. at 1086. Specifically, discovery is warranted "[w]here specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." Bracy v. Gramley, 520 U.S. at 908-909, 117 S.Ct. at 1799 (citing Harris v. Nelson, 394 U.S. at 299, 117 S. Ct. at 1091). In such cases it is the duty of the courts to provide the necessary facilities and procedures for an adequate inquiry. Id. The district court has discretion to decide whether to grant discovery, and likewise, has discretion to determine the scope and extent of such discovery. Id.

Here, Petitioners argue that they have alleged facts in their Section 2255 petitions to the extent that discovery of facts to further establish their claims is warranted. The issue before this Court is, therefore, whether or not Petitioners have established good cause for discovery with respect to each of the claims; that is, have they made specific allegations before the Court demonstrating that they may be entitled to relief, or are their assertions purely speculative.

3

## III. DISCUSSION

Before determining whether or not Petitioners are entitled to discovery under Rule 6(a), the Court must first identify the essential elements of their claims. Id. at 904 (citing United States v. Armstrong, 517 U.S. 456, 469, 116 S.Ct. 1480, 1488, 134 L.Ed. 2d 687 (1996)).

### A. Alleged Instances of Prosecutorial Misconduct

#### 1. The Government's Alleged Presentation of Perjured Testimony

Petitioners request discovery to permit them to fully develop facts to show that the Government knowingly presented the perjured trial testimony of Maurice Saunders, Gregg Scott, Hussone Jones, and Priscilla Greene. A conviction acquired by the prosecution's knowing use of perjured testimony violates due process when there is any reasonable likelihood that the false testimony could have affected the jury's judgment. Boyd v. Frency, 147 F.3d 319, 329-330 (4th Cir. 1998) (internal citations omitted). This is true whether the prosecution solicited testimony it knew to be false or simply allowed such testimony to pass uncorrected. Id. (citing Giglio v. United States, 405 U.S. 150, 153, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972)). To prevail on such a claim of prosecutorial misconduct, Petitioners must affirmatively demonstrate (1) that the testimony in question was false; (2) that the Government knew or reasonably should have known that it was false; and (3) that the false testimony was material because there was a reasonable probability that the false testimony could have affected the verdict. Id.

##### (a) Maurice Saunders and Gregg Scott

Petitioners' key allegations concerning Maurice Saunders' and Gregg Scott's testimony involve statements concerning Petitioners' participation in a CCE. To prove a CCE charge, the Government must show that the defendant engaged in a "continuing series" of drug violations "in

4

concert with five or more other persons with respect to whom [the defendant] occupie[d] a position of organizer, a supervisory position, or any other position of management . . . ." 21 U.S.C. § 848(c) (Supp. 1999).

Several members of the alleged New York Boyz conspiracy interviewed by Petitioners in post-conviction investigations admit that the New York Boyz were friends and dealt drugs, but dispute that they were a highly organized, violent drug operation. Petitioners contend that this evidence both contradicts Scott's testimony and proves that the details he provided at trial regarding the New York Boyz' activity were patently false.

Petitioners' same post-conviction investigations also allegedly reveal that Government witness Maurice Saunders gave material false testimony when he claimed that he accompanied "Hess" and Tipton to New York to buy large quantities of powder cocaine from "Light." Their findings indicate that "Light," the alleged leader of the New York Boyz and the Newtowne Gang's purported supplier of bulk cocaine, was incarcerated in New Jersey during the entire existence of the Newtowne Gang.

There is, however, no concrete evidence indicating that either Scott's or Saunders' testimony is false. Even if the Court assumes that the testimony is false, Petitioners have alleged nothing that indicates that the Government knew or should have known this. Further, Petitioners fail to show that the false testimony was material. An abundance of other evidence at trial indicated that there was a CCE; thus, assuming that Scott's and Saunders' testimony was false, there is no reasonable probability that such false testimony could have affected the verdict.

(b) Hussone Jones

At trial, Jones testified that he witnessed Tipton murder Douglas Talley and that he saw

5

the events preceding and following Talley's murder. In his post-conviction investigation, Petitioner Tipton obtained a sworn statement from Marcus Tyler "Wildman" Stevens that contradicts Jones' testimony. Jones testified that Tipton gave Stevens a knife, but Stevens says he never saw Tipton with a knife and that Tipton never gave him a knife to wash. According to Petitioners, the Government was aware of such "false testimony" because other agents of the Government may have interviewed Stevens and learned that Jones' testimony was false.

Petitioners fail to establish good cause for discovery because on these facts, they have not shown that they could make out a claim of prosecutorial misconduct. Stevens has offered nothing to indicate that he has knowledge about the murder itself, and Tipton has presented no evidence from the post-conviction interview that would tend to exculpate him. Combined with the fact that other evidence at trial overwhelmingly corroborates the events surrounding Talley's murder as Jones described them, even if his statement were false, it is immaterial. Finally, that other agents may have interviewed Stevens, or that Vick may have failed to take notes from his meeting with Stevens amounts to pure speculation and is not an adequate grounds for discovery.

(c) Priscilla Greene

Greene testified that Douglas Moody was killed "because [Johnson] and [Tipton] and them didn't want . . . [Moody] to work in that area . . . [s]elling cocaine." This testimony at Petitioners' trial regarding the circumstances surrounding Moody's murder differed slightly from Greene's testimony at Vernon Lance Thomas' trial three months later. Petitioners contend that such discrepancies indicate that Greene lied at their trial.

"[A] defendant seeking to vacate a conviction based on perjured testimony must show that the testimony was, indeed, perjured." United States v. Griley, 814 F.2d 967, 971 (4th

6

Cir.1987). Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony. See Overton v. United States, 450 F.2d 919, 920 (5th Cir.1971); Hall v. United States, 30 F.Supp.2d 883, 891 (E.D. Va. 1998), appeal dismissed, 187 F.3d 632, 1999 WL 587893 (4th Cir.(Va.)). Not only have Petitioners alleged no facts to establish that Greene's inconsistent testimony reaches the level of false, perjured testimony, but other evidence supports the central thrust of Greene's testimony: that is, Roane retrieved a large, black-handled knife from Greene, and fatally attacked Moody in the alleyway outside the apartment building. Greene's inconsistencies regarding various details are minor discrepancies that do not establish a reasonable probability that this witness committed perjury.

2. Misconduct Regarding Proof of the CCE

Tipton and Johnson next contest the Government's use of the "conclusory" terms "worker" and "employee" to establish that they were supervisors in the alleged CCE. On direct appeal in this case, "each of the [petitioners] challenge[d] the sufficiency of the evidence to support the requisite finding under the CCE count that he acted as an organizer, supervisor, or manager with respect to five or more persons," Tipton, 90 F.3d at 890, and the circuit court summarily rejected this argument after thoroughly considering it. A defendant may not use § 2255 as a vehicle to reargue issues that were fully considered on direct appeal. Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir.1976). Accordingly, Tipton and Johnson may not pursue this claim on collateral review, since the argument is a slightly modified version of their insufficiency argument. They are thus not entitled to discovery showing that neither Johnson nor Tipton had a supervisory or management role in the CCE.

7

3.   The Government's Alleged Failure to Disclose *Brady* Material

In Brady v. Maryland, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963), cited in Strickler v. Greene, 119 S.Ct. 1936, 1948 (1999).   The prosecution has the duty to disclose such evidence even though the accused has not requested it to do so, United States v. Agurs, 427 U.S. 97, 107, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976), and the duty encompasses impeachment evidence as well  as exculpatory evidence. Strickler v. Greene,  119 S.Ct. at 1948 (citing United States v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985)).   Such evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id.

Mere speculation that some exculpatory material may have been withheld is unlikely to establish good cause for a discovery request on collateral review, id. at 1950-1951, and there is never a real "*Brady* violation" unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict. Id. at 1948.

Petitioners argue that the Government breached its duty under Brady by not disclosing exculpatory evidence.

(a) Jones' Testimony

Tipton submits that pursuant to Brady the Government had a duty to disclose the exculpatory evidence regarding Jones' false testimony about the murder of Douglas Talley.  The Government counters that it produced Brady material, including prosecutor Vick's

8

contemporaneous notes of his interview with Stevens. As previously noted, the notes reveal no exculpatory information. Petitioners' submission about what "Wildman" Stevens said to the Government regarding events described by Jones are thus totally speculative and do not provide adequate justification for discovery.

(b) John Knight and "Studie" Green

Tipton discovered, in the course of a post-conviction investigation interview with John Knight and Thomas "Studie" Green, that Knight and Green told the Government that they were with Tipton when he received a telephone call from Johnson. They also told the Government that during this phone conversation Johnson told Tipton that he had committed the Stoney Run murders by killing Linwood Chiles and Curt Thorne, and that he had injured the Greene Sisters. Petitioners posit that suppressed evidence lends support to additional evidence verifying Tipton's interpretation of Townes' statement where Johnson revealed that he committed the murders, and corroborates Hussone Jones' testimony that Tipton told him that Johnson committed the murders. Such evidence, according to Petitioners, would have created reasonable doubt for the jury as to whether Tipton was involved in the murders.

Defense counsel, however, was also aware of Green's and Knight's presence in the car. Since Green was actually present at trial on defense subpoena, but ultimately was not called as a witness, whatever exculpatory evidence that existed was available to the defense with the reasonable exercise of diligence.

Moreover, Green's disclosures do not provide Tipton with an alibi. Although Green and Knight could provide an alibi for Tipton at the time the telephone call was made, neither Green nor Knight could provide an alibi for Tipton at the time the murders were actually committed.

9

The Court will thus not grant Petitioners discovery on this matter.

4. Witness list

The prosecution, according to Petitioners, violated 18 U.S.C. § 3432 by failing to provide petitioners with the "place of abode" of each of the witnesses against them, and this Court erred by permitting the Government to refuse to comply with Section 3432 based on its representation that it had placed the witnesses in the Witness Protection Program.

The Government correctly notes that these issues were litigated on direct appeal and resolved against petitioners by the Fourth Circuit. See Tipton, 90 F.3d at 888-889. Petitioners are not permitted to relitigate issues that were previously decided against them. See generally, Parker v. Angelone, 959 F. Supp. 319, 320 (E.D. Va. 1997). Thus this matter is inappropriate for relitigation on a §2255 motion and discovery will not be granted.

5. Violation of 18 U.S.C. § 201(c)(2)

18 U.S.C. § 201(c)(2) punishes whoever:

> [D]irectly or indirectly, gives, offers, or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, or other proceeding, before any court . . . .

The Fourth Circuit has held that 201(c)(2) does not prohibit the United States from acting in accordance with its statutory authority to use immunity, leniency, and plea agreements to obtain truthful testimony, nor does it require the exclusion of such evidence. See United States v. Richardson, 195 F.3d 192, 196-197 (4th Cir. 1999). Thus, Petitioners' contention that the Government violated this statute because nearly every fact witness against them received a "thing of value" from the Government in exchange for his or her testimony is without merit. The Government immunized some witnesses, and helped others obtain reduced sentences, which the

10

statute does not prohibit.  Accordingly, Petitioners have no claim, and thus cannot conduct discovery.

6. Impermissible Discrimination by Prosecutors in Jury Selection

The Government used eight of its ten peremptory strikes to remove female jurors.  The use of gender-based peremptory strikes is forbidden and would require the Court to set aside Petitioners' convictions.  J.E.B. v. Alabama, 114 S.Ct. 1419, 1430 (1994); see Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Petitioners thus argue that they have alleged a *prima facie* case of the prosecution's improper discrimination against women in its exercise of peremptory strikes, and they request leave to conduct discovery concerning the Government's use of such strikes.

Numbers alone do not establish a prima facie case of discrimination.  As the Fourth Circuit noted,  "the bare showing of gender discrimination first attempted on this direct appeal does not suffice either to allow first instance consideration by this court (as appellants concede), nor to warrant a remand for first instance consideration by the district court." Tipton, 90 F.3d at 881.

That aside, Petitioners procedurally defaulted on this claim by not raising at jury selection a contemporaneous objection regarding the Government's use of peremptory challenges.  The failure to object to the use of a peremptory challenge forever denies the Government the opportunity to provide fresh explanation for the challenge.  Because of the procedural model contemplated by Batson/J.E.B. v. Alabama, i.e., objection, explanation, and ruling by the court, it is not likely that retroactive application would be appropriate.  Finally, whatever the reason for the Government's use of their peremptory challenges, it cannot be described as newly discovered evidence that would have produced a different verdict.

B. Potential Juror Misconduct Claim

Petitioners request that the Court reconsider its Order denying Petitioners' motion for leave to interview the trial jurors is denied.

C. Johnson's Execution Is Barred Due to Mental Impairments

Johnson argues that his execution is barred by a statute prohibiting the execution of the mentally retarded, and seeks discovery of internal Department of Justice guidelines employed in deciding whether to pursue or carry out a capital sentence against a defendant.

To be classified as mentally retarded, a person generally must have an I.Q. of 70 or below. Penry v. Lynaugh, 492 U.S. 302, 308, 109 S.Ct. 2934, 2941, 106 L.Ed.2d 256 n. 1 (1990) (citing American Association on Mental Deficiency (now Retardation) (AAMR), Classification in Mental Retardation 1 (H. Grossman ed. 1983)). Evidence at trial indicated that Johnson's I.Q. is 77, and he is therefore not mentally retarded. Without addressing other issues regarding Petitioners' access of Department of Justice internal memoranda, clearly Johnson cannot prevail on this claim in light of the evidence presented at trial. Accordingly discovery is unnecessary.

D. Tipton Received Ineffective Assistance of Counsel Regarding the Talley Murder

Tipton requests access to a knife found at the murder scene in Talley's car inside Johnny Lee Byrd's jacket pocket, to determine whether or not it was the murder weapon. The Court hereby GRANTS Petitioner leave to test the knife. If Petitioner finds evidence establishing that the knife is connected to the Talley murder, he may petition the Court for leave to conduct further discovery and access documents related to the knife.

12

IV. Conclusion

For the reasons stated herein, Tipton may only conduct discovery with respect to the

knife. All other requests are hereby DENIED.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

And it is SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE

MAY  3 2000
_____
         DATE

13