# EXHIBIT 78

22926      CONGRESSIONAL RECORD—HOUSE

# HOUSE OF REPRESENTATIVES—*Thursday, September 8, 1988*

The House met at 10 a.m.

The Chaplain, Rev. James David Ford, D.D., offered the following prayer:

We are grateful, O God, that You raise up public servants who dedicate their lives to make our Nation a better place and who do what they can to help people of every background or need. We are thankful that there are leaders who use their gifts to help lift people to walk on higher ground. At the beginning of this new day we express our special gratitude for the contributions of our friend and colleague, CLAUDE PEPPER. At this time of his birthday we remember him for his life and labor and pray that Your benediction will continue to bless him and each one of us that we will be the people You would have us be and do those good things that honor You and serve every person in Your creation. This we pray. Amen.

---

## THE JOURNAL

The SPEAKER. The Chair has examined the Journal of the last day's proceedings and announces to the House his approval thereof.

Pursuant to clause 1, rule I, the Journal stands approved.

Mrs. BENTLEY. Mr. Speaker, pursuant to clause 1, rule I, I demand a vote on agreeing to the Speaker's approval of the Journal.

The SPEAKER. The question is on the Chair's approval of the Journal.

The question was taken; and the Speaker announced that the ayes appeared to have it.

Mrs. BENTLEY. Mr. Speaker, I object to the vote on the ground that a quorum is not present and make the point of order that a quorum is not present.

The Speaker. Evidently, a quorum is not present.

The Sergeant at Arms will notify absent Members.

The vote was taken by electronic device, and there were—yeas 256, nays 117, not voting 58, as follows:

[Roll No. 293]

### YEAS—256

| | | |
|---|---|---|
| Akaka | Bennett | Brooks |
| Alexander | Berman | Broomfield |
| Anderson | Bevill | Brown (CA) |
| Andrews | Bilbray | Bruce |
| Annunzio | Boggs | Bryant |
| Applegate | Boland | Bustamante |
| Archer | Bonior | Byron |
| Aspin | Bonker | Callahan |
| Atkins | Borski | Campbell |
| Bartlett | Bosco | Cardin |
| Bateman | Boucher | Carper |
| Bates | Boxer | Carr |
| Bellenson | Brennan | Chappell |
| Clarke | Kaptur | Quillen |
| Clement | Kasich | Rahall |
| Coelho | Kastenmeier | Ravenel |
| Coleman (TX) | Kennedy | Ray |
| Collins | Kildee | Regula |
| Combest | Kleczka | Richardson |
| Conte | Kolter | Rinaldo |
| Cooper | Kostmayer | Ritter |
| Costello | Lancaster | Robinson |
| Courter | Lantos | Roe |
| Coyne | Lehman (CA) | Rose |
| Darden | Lehman (FL) | Rostenkowski |
| Davis (MI) | Leland | Rowland (GA) |
| de la Garza | Lent | Russo |
| DeFazio | Levin (MI) | Sabo |
| Derrick | Levine (CA) | Saiki |
| Dicks | Lewis (GA) | Savage |
| Dixon | Lipinski | Sawyer |
| Donnelly | Lloyd | Scheuer |
| Dorgan (ND) | Lott | Schneider |
| Downey | Lowry (WA) | Schulze |
| Durbin | Luken, Thomas | Schumer |
| Dwyer | Manton | Sharp |
| Dymally | Markey | Shaw |
| Eckart | Martinez | Shumway |
| Edwards (CA) | Matsui | Shuster |
| English | Mavroules | Sisisky |
| Erdreich | Mazzoli | Skaggs |
| Espy | McCollum | Skelton |
| Evans | McCrery | Slattery |
| Fascell | McCurdy | Slaughter (NY) |
| Fawell | McEwen | Smith (FL) |
| Fazio | McHugh | Smith (IA) |
| Fish | McMillen (MD) | Smith (NE) |
| Flake | Mfume | Smith (NJ) |
| Flippo | Miller (CA) | Solarz |
| Florio | Miller (WA) | Spratt |
| Foglietta | Mineta | Staggers |
| Foley | Mollohan | Stallings |
| Frost | Montgomery | Stark |
| Gaydos | Moody | Stenholm |
| Gejdenson | Morella | Stokes |
| Gephardt | Morrison (CT) | Stratton |
| Gibbons | Morrison (WA) | Studds |
| Gilman | Mrazek | Sweeney |
| Glickman | Murtha | Swift |
| Gonzalez | Myers | Synar |
| Gordon | Natcher | Tallon |
| Grant | Neal | Taylor |
| Gray (IL) | Nelson | Thomas (GA) |
| Green | Nowak | Torricelli |
| Guarini | Oakar | Traficant |
| Hall (TX) | Oberstar | Traxler |
| Hamilton | Obey | Udall |
| Hammerschmidt | Olin | Valentine |
| Harris | Ortiz | Vento |
| Hatcher | Owens (NY) | Visclosky |
| Hayes (IL) | Owens (UT) | Volkmer |
| Hayes (LA) | Oxley | Walgren |
| Hefner | Panetta | Watkins |
| Hertel | Parris | Weiss |
| Hochbrueckner | Patterson | Whitten |
| Horton | Payne | Williams |
| Hoyer | Pease | Wise |
| Hubbard | Pelosi | Wolpe |
| Huckaby | Pepper | Wortley |
| Hughes | Perkins | Wyden |
| Jeffords | Petri | Wylie |
| Jenkins | Pickett | Yates |
| Johnson (CT) | Pickle | Yatron |
| Johnson (SD) | Porter | Young (AK) |
| Jontz | Price | |
| Kanjorski | Pursell | |

### NAYS—117

| | | |
|---|---|---|
| Armey | Buechner | Dannemeyer |
| Baker | Burton | Daub |
| Ballenger | Chandler | Davis (IL) |
| Barton | Clay | DeLay |
| Bentley | Clinger | DeWine |
| Bereuter | Coats | Dickinson |
| Bilirakis | Coble | DioGuardi |
| Bliley | Coleman (MO) | Dornan (CA) |
| Boehlert | Craig | Dreier |
| Brown (CO) | Crane | Edwards (OK) |
| Emerson | Lightfoot | Sensenbrenner |
| Fields | Livingston | Shays |
| Frenzel | Lukens, Donald | Sikorski |
| Gallegly | Lungren | Skeen |
| Gallo | Madigan | Slaughter (VA) |
| Gekas | Marlenee | Smith (TX) |
| Goodling | Martin (IL) | Smith, Denny |
| Gradison | Martin (NY) | (OR) |
| Grandy | McCandless | Smith, Robert |
| Gregg | McMillan (NC) | (NH) |
| Gunderson | Meyers | Smith, Robert |
| Hansen | Michel | (OR) |
| Hastert | Miller (OH) | Snowe |
| Hefley | Molinari | Solomon |
| Henry | Moorhead | Stangeland |
| Herger | Murphy | Stump |
| Hiler | Nielson | Sundquist |
| Holloway | Pashayan | Swindall |
| Hopkins | Penny | Tauke |
| Hunter | Rhodes | Thomas (CA) |
| Inhofe | Ridge | Upton |
| Ireland | Roberts | Vander Jagt |
| Jacobs | Rogers | Vucanovich |
| Kolbe | Roth | Walker |
| Kyl | Roukema | Weber |
| Lagomarsino | Rowland (CT) | Weldon |
| Latta | Saxton | Wheat |
| Leach (IA) | Schaefer | Whittaker |
| Lewis (CA) | Schroeder | Wolf |
| Lewis (FL) | Schuette | Young (FL) |

### NOT VOTING—58

| | | |
|---|---|---|
| Ackerman | Frank | McCloskey |
| Anthony | Garcia | McDade |
| AuCoin | Gingrich | McGrath |
| Badham | Gray (PA) | Mica |
| Barnard | Hall (OH) | Moakley |
| Boulter | Hawkins | Nagle |
| Bunning | Houghton | Nichols |
| Chapman | Hutto | Packard |
| Cheney | Hyde | Rangel |
| Conyers | Jones (NC) | Rodino |
| Coughlin | Jones (TN) | Roybal |
| Crockett | Kemp | Spence |
| Dellums | Kennelly | St Germain |
| Dingell | Konnyu | Tauzin |
| Dowdy | LaFalce | Torres |
| Dyson | Leath (TX) | Towns |
| Early | Lowery (CA) | Waxman |
| Feighan | Lujan | Wilson |
| Ford (MI) | Mack | |
| Ford (TN) | MacKay | |

□ 1024

So the Journal was approved.

The result of the vote was announced as above recorded.

---

## ANNOUNCEMENT BY THE SPEAKER

The SPEAKER. The Chair desires to make a statement and will then recognize the gentleman from California [Mr. HUNTER]. The Chair would like to explain the plans for the consideration of legislation and other action by the House today.

With the kind permission of the membership, the Chair would like to suggest the following order of legislative business today: Members may desire to learn what is planned and in what order in order that they may make their own plans. It is the intention of the Chair that we would receive messages from the Senate or from the President, and then the

---

□ This symbol represents the time of day during the House proceedings, e.g., □ 1407 is 2:07 p.m.

Matter set in this typeface indicates words inserted or appended, rather than spoken, by a Member of the House on the floor.

**22992**  CONGRESSIONAL RECORD—HOUSE  *September 8, 1988*

We cannot afford to make it more difficult to bring drug traffickers to trial and to obtain convictions. I urge my colleagues to oppose the Gekas death penalty amendment.

Mr. DREIER of California. Mr. Chairman, I rise in support of the Gekas amendment to permit the death penalty for the intentional killing of a person in the course of committing or in the furtherance of a drug felony. The Supreme Court ruled in 1976 that the death penalty is constitutional, as long as certain procedures and safeguards are followed. The Gekas amendment establishes a constitutionally acceptable procedure for imposing capital punishment that would require an examination of the aggravating and mitigating circumstances surrounding each offense.

Mr. Chairman, tougher punishment is necessary to address the dramatic increase in drug-related crime. It has been demonstrated that such crime is more likely to include violence, particularly against police and increasingly against innocent bystanders. In light of this fact, we need to give prosecutors stronger weapons which will send a message that murder in the context of drug trafficking will not be tolerated.

I would like to share with my colleagues the results of a 1987 Los Angeles Times poll that showed 74 percent of the people questioned favored the use of the death penalty in certain instances. If this poll was conducted in my Los Angeles County congressional district today, I would promise you that the favorable response on capital punishment would be even greater.

The law-abiding citizens of Covina, Claremont, Glendora, Whittier, Pomona, and other communities in my district know the fear that comes from living near neighborhoods with armed street gangs involved in the drug trade. In many cases, these gangs have become well-organized, highly sophisticated criminal enterprises involved in national and international criminal activities. My constituents understand that these gangs do not value human life, instead they take it without compunction. Unfortunately, no deterrent seems to exist currently for this inhuman behavior. If there is a solution to this cycle of violence, I think the threat of the death penalty is it.

Finally, many of my colleagues have argued that foreign countries which arrest drug kingpins would be reluctant to extradite them to a death sentence. I believe it is important to point out that the Gekas amendment gives the Secretary of State the discretion to preclude the death penalty if that were the only way to bring such an individual before the American judicial system.

Mr. ROWLAND of Connecticut. Mr. Chairman, I rise in strong support of the Gekas amendment to H.R. 5210, the Omnibus Drug Initiative Act of 1988. This amendment will provide an important tool in the war against drugs. Clearly, strong steps are needed to reduce the epidemic of drug-related murders.

I am concerned with the increasing amount of drug-related crime and the fact that this type of crime is more likely to be associated with violence. Police and an increasing number of innocent bystanders are being killed by drug traffickers. Drug-related murders demonstrate a total disregard for civilized standards of behavior and the sanctity of life. I

urge my colleagues to take an important step toward stopping the escalating number of drug-related killings and support the Gekas amendment.

The CHAIRMAN. The question is on the amendment offered by the gentleman from Pennsylvania [Mr. GEKAS].

The question was taken; and the Chairman announced that the noes appeared to have it.

### RECORDED VOTE

Mr. GEKAS. Mr. Chairman, I demand a recorded vote.

A recorded vote was ordered.

The vote was taken by electronic device, and there were—ayes 299, noes 111, not voting 21, as follows:

[Roll No. 298]

**AYES—299**

| | | |
|---|---|---|
| Anderson | DioGuardi | Kasich |
| Andrews | Donnelly | Kennedy |
| Annunzio | Dorgan (ND) | Kennelly |
| Anthony | Dornan (CA) | Kolbe |
| Applegate | Dreier | Kolter |
| Archer | Durbin | Konnyu |
| Armey | Dyson | Kyl |
| Aspin | Early | Lagomarsino |
| Baker | Eckart | Lancaster |
| Ballenger | Edwards (OK) | Lantos |
| Barnard | Emerson | Latta |
| Bartlett | English | Leath (TX) |
| Barton | Erdreich | Lehman (CA) |
| Bateman | Espy | Lent |
| Bennett | Fascell | Lewis (CA) |
| Bentley | Fawell | Lewis (FL) |
| Bereuter | Fields | Lightfoot |
| Bevill | Fish | Lipinski |
| Bilbray | Flippo | Livingston |
| Bilirakis | Florio | Lloyd |
| Bliley | Frenzel | Lott |
| Boehlert | Frost | Lowery (CA) |
| Borski | Gallegly | Lujan |
| Bosco | Gallo | Lukens, Donald |
| Boxer | Gaydos | Lungren |
| Brooks | Gekas | Mack |
| Broomfield | Gephardt | MacKay |
| Brown (CO) | Gibbons | Madigan |
| Bruce | Gilman | Manton |
| Bryant | Gingrich | Marlenee |
| Buechner | Glickman | Martin (NY) |
| Bunning | Gradison | Matsui |
| Burton | Grandy | Mavroules |
| Bustamante | Grant | Mazzoli |
| Byron | Gray (IL) | McCandless |
| Callahan | Green | McCloskey |
| Campbell | Gregg | McCollum |
| Carper | Guarini | McCrery |
| Carr | Gunderson | McDade |
| Chandler | Hall (OH) | McEwen |
| Chapman | Hall (TX) | McGrath |
| Chappell | Hammerschmidt | McMillan (NC) |
| Clarke | Hansen | McMillen (MD) |
| Clement | Harris | Meyers |
| Clinger | Hastert | Mfume |
| Coats | Hatcher | Michel |
| Coble | Hayes (LA) | Miller (OH) |
| Coelho | Hefley | Moakley |
| Coleman (MO) | Hefner | Molinari |
| Coleman (TX) | Henry | Montgomery |
| Combest | Herger | Moorhead |
| Cooper | Hiler | Morrison (WA) |
| Costello | Holloway | Murphy |
| Coughlin | Hopkins | Murtha |
| Courter | Horton | Myers |
| Craig | Houghton | Natcher |
| Crane | Hubbard | Neal |
| Dannemeyer | Huckaby | Nelson |
| Darden | Hughes | Nichols |
| Daub | Hunter | Nielson |
| Davis (IL) | Hutto | Oakar |
| Davis (MI) | Hyde | Olin |
| de la Garza | Inhofe | Ortiz |
| DeFazio | Ireland | Oxley |
| DeLay | Jeffords | Panetta |
| Derrick | Jenkins | Parris |
| DeWine | Johnson (CT) | Pashayan |
| Dickinson | Johnson (SD) | Patterson |
| Dicks | Kanjorski | Payne |
| Dingell | Kaptur | Pease |

| | | |
|---|---|---|
| Pepper | Schaefer | Sundquist |
| Perkins | Schneider | Sweeney |
| Petri | Schuette | Swindall |
| Pickett | Schulze | Tallon |
| Pickle | Sensenbrenner | Tauzin |
| Porter | Shaw | Taylor |
| Price | Shumway | Thomas (CA) |
| Pursell | Shuster | Thomas (GA) |
| Quillen | Sisisky | Torricelli |
| Ravenel | Skeen | Traficant |
| Ray | Skelton | Udall |
| Regula | Slattery | Upton |
| Rhodes | Slaughter (VA) | Valentine |
| Richardson | Smith (FL) | Vander Jagt |
| Ridge | Smith (NE) | Volkmer |
| Rinaldo | Smith (TX) | Vucanovich |
| Ritter | Smith, Denny | Walgren |
| Roberts | (OR) | Walker |
| Robinson | Smith, Robert | Watkins |
| Roe | (NH) | Weldon |
| Rogers | Smith, Robert | Whittaker |
| Rose | (OR) | Whitten |
| Rostenkowski | Snowe | Wilson |
| Roth | Solomon | Wolf |
| Roukema | Spratt | Wortley |
| Rowland (CT) | St Germain | Wyden |
| Rowland (GA) | Stallings | Wylie |
| Russo | Stangeland | Yatron |
| Saiki | Stenholm | Young (AK) |
| Sawyer | Stratton | Young (FL) |
| Saxton | Stump | |

**NOES—111**

| | | |
|---|---|---|
| Ackerman | Gonzalez | Obey |
| Akaka | Goodling | Owens (NY) |
| Atkins | Gordon | Owens (UT) |
| AuCoin | Gray (PA) | Pelosi |
| Bates | Hamilton | Penny |
| Bellenson | Hawkins | Rahall |
| Berman | Hayes (IL) | Rangel |
| Boggs | Hertel | Rodino |
| Boland | Hochbrueckner | Roybal |
| Bonior | Hoyer | Sabo |
| Bonker | Jacobs | Savage |
| Boucher | Jontz | Scheuer |
| Brennan | Kastenmeier | Schroeder |
| Brown (CA) | Kildee | Schumer |
| Cardin | Kleczka | Sharp |
| Clay | Kostmayer | Shays |
| Collins | LaFalce | Sikorski |
| Conte | Leach (IA) | Skaggs |
| Conyers | Lehman (FL) | Slaughter (NY) |
| Coyne | Leland | Smith (IA) |
| Crockett | Levin (MI) | Smith (NJ) |
| Dellums | Levine (CA) | Solarz |
| Dixon | Lewis (GA) | Staggers |
| Downey | Lowry (WA) | Stokes |
| Dwyer | Markey | Studds |
| Dymally | McHugh | Synar |
| Edwards (CA) | Miller (CA) | Tauke |
| Evans | Miller (WA) | Traxler |
| Feighan | Mineta | Vento |
| Flake | Mollohan | Visclosky |
| Foglietta | Moody | Weber |
| Foley | Morella | Weiss |
| Ford (MI) | Morrison (CT) | Wheat |
| Ford (TN) | Mrazek | Williams |
| Frank | Nagle | Wise |
| Garcia | Nowak | Wolpe |
| Gejdenson | Oberstar | Yates |

**NOT VOTING—21**

| | | |
|---|---|---|
| Alexander | Jones (TN) | Packard |
| Badham | Kemp | Spence |
| Boulter | Luken, Thomas | Stark |
| Cheney | Martin (IL) | Swift |
| Dowdy | Martinez | Torres |
| Fazio | McCurdy | Towns |
| Jones (NC) | Mica | Waxman |

□ 1557

The Clerk announced the following pairs:

On this vote:

Mr. Torres for, with Mr. Towns against.

Mr. Jones of North Carolina for, with Mr. Waxman against.

Mrs. Martin of Illinois for, with Mr. Thomas A. Luken against.

Mr. Kemp for, with Mr. Fazio against.

Mr. DAUB and Mr. ROSE changed their vote from "no" to "aye."

*September 8, 1988*      CONGRESSIONAL RECORD—HOUSE      **22993**

So the amendment was agreed to.

The result of the vote was announced as above recorded.

AMENDMENT OFFERED BY MR. LEVIN OF MICHIGAN

Mr. LEVIN of Michigan. Mr. Chairman, I offer an amendment.

The CHAIRMAN. The Clerk will designate the amendment.

The text of the amendment is as follows:

Amendment offered by Mr. LEVIN of Michigan: At the end of the matter designated as a quoted subsection (1) in the matter proposed to be inserted, insert the following:

A sentence of death shall not be carried out upon a person who is mentally retarded.

□ 1600

The CHAIRMAN. Pursuant to the rule, the gentleman from Michigan [Mr. LEVIN] will be recognized for 10 minutes.

Does the gentleman from Pennsylvania [Mr. GEKAS] seek recognition?

Mr. GEKAS. Yes, I do, Mr. Chairman, but I do not oppose the amendment.

The CHAIRMAN. Then the gentleman does not qualify.

Does the gentleman from New Jersey [Mr. HUGHES] seek recognition?

Mr. HUGHES. Mr. Chairman, I do not oppose the amendment in its present form.

Mr. LEVIN of Michigan. Mr. Chairman, I will yield half of my time to the gentleman from Pennsylvania [Mr. GEKAS], and perhaps that will solve the problem.

The CHAIRMAN. There being no Member seeking recognition in opposition, the gentleman from Michigan [Mr. LEVIN], under the rule, will be recognized for 10 minutes.

The Chair recognizes the gentleman from Michigan [Mr. LEVIN].

Mr. LEVIN of Michigan. Mr. Chairman, I yield myself such time as I may consume.

Mr. Chairman, my amendment consists simply of one sentence: "A sentence of death shall not be carried out upon a person who is mentally retarded."

Two years ago in Georgia, Jerome Bowden was executed. Tests upon him indicated over the years that his IQ ranged from 59 to 65.

This year the Georgia Legislature enacted a law that prohibits execution in the case of a mentally retarded person. It was a bipartisan action that passed by a substantial margin. It had the support of the vast majority of the public.

As mentioned, my amendment would state simply that a sentence of death shall not be carried out upon a person who is mentally retarded. There is a well-established definition of mental retardation, and I would like to read it. It is brief. I know the gentleman from Pennsylvania [Mr. GEKAS] has a question regarding it.

The definition of "mental retardation" promulgated by the American Association on Mental Retardation and universally accepted in the courts states as follows: It states that a person shall be considered mentally retarded when they have "significantly subaverage general intellectual functioning existing concurrently with deficits in adaptive behavior and manifested during the developmental period." That is in the early period of their lives.

Under this bill, we do not execute children. I think it would be equally inhumane to execute someone who is mentally retarded.

Mr. Chairman, I urge support of this amendment.

Mr. GEKAS. Mr. Chairman, will the gentleman yield?

Mr. LEVIN of Michigan. I yield to the distinguished gentleman from Pennsylvania.

Mr. GEKAS. Mr. Chairman, I thank the gentleman for yielding.

Did the gentleman read into the record the definition as we agreed is the instant definition that is used nationwide?

Mr. LEVIN of Michigan. Yes; this is the present definition. It is subject to change, but it has not changed very much. The whole thrust is not to expand it; it is to focus it on those who are truly mentally retarded. So I think there is no danger here that there would be effective abuse by someone who inappropriately claimed mental retardation. The purpose of this is very much confined to prohibit execution of those who are mentally retarded.

Mr. GEKAS. Mr. Chairman, I thank the gentleman for the explanation.

I rise in support of the proposition of the gentleman from Michigan, and of his amendment. I do so on two bases, on my inherent feeling and my own sympathies with the theme of mental retardation that caused me to support the amendment, but I want to make it abundantly clear that what we do here in placing the definition into the RECORD at the time of the debate on this amendment is meant, at least from my standpoint and that of others, to create that kind of legislative history which will guide both prosecutor and defense attorney, as well as the court, in the application of all of this, should a death penalty case arise, and then be confronted with a defense of mental retardation.

I also want to make it clear that it is my understanding that legislative history should reflect the thought that in the advancement of mental retardation as a defense, the burden, therefore, should be on the defense, which it will be, if the present structure of our system obtains. So the legislative history through my remarks should also reflect that.

Mr. LEVIN of Michigan. Mr. Chairman, I have inserted the definition, indicated the circumstances under which it is operated. As to raising the defense, I would agree with the purport of what you are saying, that that defense would be handled as any other defense would be when it came to this kind of a crime or the sentencing thereof, which may be operated under a different procedure.

Mr. BARTLETT. Mr. Chairman, will the gentleman yield?

Mr. LEVIN of Michigan. Mr. Chairman, I yield to the gentleman from Texas.

Mr. BARTLETT. Mr. Chairman, I thank the gentleman for yielding

Mr. Chairman, I commend the gentleman from Michigan [Mr. LEVIN] for this amendment. It is one that needs to be adopted. I also commend the gentleman from Pennsylvania [Mr. GEKAS] for supporting it.

Mr. Chairman, I rise in support of the Levin amendment which will prohibit the death penalty from being imposed on a person who is mentally retarded. Mental retardation is one specific type of a substantial disability which impairs an individual's capacity to understand and control his actions. There are two points that need to be made about mental retardation in this context and that need to be highlighted, first that mental retardation is permanent and, second, it can be measured in quantifiable scientific terms.

The level of mental retardation is determined by qualified psychologists, using one of several individually administered standardized general intelligence tests. These tests have been scientifically proven to be reliable and valid measures of ability and performance. A person is diagnosed as being mentally retarded, it is irreversible and incurable.

The American Association on Mental Retardation, the Nation's oldest and largest professional organization in the field of mental retardation defines a mentally retarded person as "someone who has significantly subaverage general intellectual functioning existing concurrently with deficits in adaptive behavior and manifested during the developmental period." This means a person with an IQ of 70 or below or less than 3 percent of the population. It is this definition which should guide the courts in determining whether an individual is mentally retarded or not.

Under this definition, an adult with mental retardation who is functioning at the highest levels only has the mental age of a 12-year-old child. Such an individual, because of his disability, cannot understand the nature of the death penalty, the nature of the court proceedings and cannot recognize and communicate facts to assist in his defense. In addition, the death penalty

USCA4 Appeal: 21-2    Doc: 5-40    Filed: 01/08/2021    Pg: 5 of 5

will not deter other individuals with mental retardation from committing drug-related murders because they are incapable of comprehending that the death penalty will apply to them if such a crime is committed.

Throughout the United States there is widespread sentiment from those who support the death penalty that it should not apply to people with mental retardation. In 1986, the State of Georgia executed an individual whose IQ was determined to be between 59 and 65. Public reaction in Georgia to this execution spurred the State to enact legislation prohibiting future executions of persons who are mentally retarded. It was the first State to enact such a law.

The death penalty is the ultimate punishment. It is reserved for those individuals sentenced by a court of law on the basis of their blameworthiness, moral guilt and personal responsibility.

People with mental retardation have substantial deficits in the areas of communication, memory, impulsiveness, and moral comprehension thereby limiting their ability to control and understand their actions. I believe people with mental retardation should be tried, convicted, and punished for any crime they commit. I do not believe the death penalty serves its purpose when applied to the mentally retarded.

I urge my colleagues to support and pass the Levin amendment.

Mr. GREGG. Mr. Chairman, will the gentleman yield?

Mr. LEVIN of Michigan. I yield to the gentleman from New Hampshire.

Mr. GREGG. Mr. Chairman, I thank the gentleman from Michigan for yielding.

Mr. Chairman, I respect the gentleman's amendment. I think it is an excellent amendment, one that is totally appropriate to the amendment that was just adopted relative to the death penalty, which I also think is appropriate and reflects the balance that this bill is reaching, on the issue of drugs, that we are addressing both sides of the question. We are addressing the enforcement side, to new initiatives in the area of coordination of police and coordination of our administrative forces, and also addressing the educational side of the drug questions, and especially the mental health side of the drug question, not only on this narrow issue, but a broader issue, setting up an alcoholic abuse area, which is also a drug.

I want to congratulate the gentleman on his amendment. We are certainly proceeding in the right way with it.

Mr. LEVIN of Michigan. Mr. Chairman, I yield 2 minutes to the gentleman from South Carolina [Mr. RAVENEL].

Mr. RAVENEL. Mr. Chairman, I rise to speak for this amendment to prohibit the death penalty for persons who are mentally retarded.

Mental retardation is a permanent and crippling disability. A mentally retarded person has the mind of a child, but he does not live in the world of a child and the world does not treat him like a child. Although a mentally retarded person may recognize that a particular act is right or wrong, he cannot understand or appreciate the magnitude of his actions or even the finality of death.

Capital punishment can serve as a deterrent only when the murder is a result of premeditation and deliberation. A person who is mentally retarded does not have the capacity to premeditate a crime or to understand its consequences, therefore the execution of a mentally retarded person does not serve as a deterrent. Instead, capital punishment becomes a cruel and excessive response, much like spanking a 6-year-old child for hitting a sibling 2 years after the act. The child has insufficient cognitive capacity to appreciate the length between his prior action and such belated punishment. The same is true with a mentally retarded person. Because I am the father of a 29-year-old mentally retarded son, and because of the knowledge and experience I have gained as a result of knowing and loving my William, I strongly urge you to support this amendment prohibiting the death penalty for persons who are mentally retarded.

Mr. LEVIN of Michigan. Mr. Chairman, I urge support of this amendment, and I yield back the balance of my time.

The CHAIRMAN. The question is on the amendment offered by the gentleman from Michigan [Mr. LEVIN].

The amendment was agreed to.

### AMENDMENTS EN BLOC OFFERED BY MR. EDWARDS OF CALIFORNIA

Mr. EDWARDS of California. Mr. Chairman, I offer amendments en bloc consisting of the amendments numbered 1, 2, 4, and 6 as printed.

The CHAIRMAN. The Clerk will designate the amendments.

The text of the amendments is as follows:

Amendments en bloc offered by Mr. EDWARDS of California:

In the portion of the matter proposed to be inserted that is designated as a quoted subsection (m), insert the following at the end of such quoted subsection (m):

"(5) The defendant was youthful, although not under the age of 18.

"(6) The defendant did not have a significant prior criminal record.

"(7) The defendant committed the offense under severe mental or emotional disturbance.

"(8) Another defendant or defendants, equally culpable in the crime, will not be punished by death.

"(9) Other defendants in other cases who were equally culpable have not been sentenced to death.

"(10) The victim consented to the criminal conduct that resulted in the victim's death.

"(11) That other factors in the defendant's background or character mitigate against imposition of the death sentence.

At the end of the portion of the matter proposed to be inserted that is designated as quoted as subsection (r) insert the following:

SEC. 6802. GAO STUDY OF THE COST OF EXECUTIONS.

(a) STUDY.—No later than three years after the date of the enactment of this Act, the Comptroller General shall carry out a study to review the cost of implementing the procedures for imposing and carrying out a death sentence prescribed by this title.

(b) SPECIFIC REQUIREMENTS.—Such study shall consider, but not be limited to, information concerning impact on workload of the Federal prosecutors and judiciary and law enforcement necessary to obtain capital sentences and executions under this Act.

(c) SUBMISSION OF REPORT.—Not later than four years after date of the enactment of this Act, the Comptroller General shall submit to Congress a report describing the results of the study.

At the end of the portion of the matter proposed to be inserted that is designated as a quoted subsection (k) insert the following:

The jury or the court, regardless of its findings with respect to aggravating and mitigating factors, is never required to impose a death sentence and the jury shall be so instructed.

Strike out the last sentence at the end of the portion of the matter proposed to be inserted that is designated as a quoted subsection (l), and insert in lieu thereof the following:

A sentence of death shall not be carried out upon a person who, as a result of mental disability—

(1) cannot understand the nature of the pending proceedings, what such person was tried for, the reason for the punishment, or the nature of the punishment; or

(2) lacks the capacity to recognize or understand facts which would make the punishment unjust or unlawful, or lacks the ability to convey such information to counsel or to the court.

The CHAIRMAN. Under the rule, the gentleman from California [Mr. EDWARDS] will be recognized for 10 minutes.

Does the gentleman from Pennsylvania [Mr. GEKAS] seek recognition?

Mr. GEKAS. I do, Mr. Chairman. I oppose the amendment as it is now constituted.

The CHAIRMAN. Pursuant to the rule, the gentleman from Pennsylvania [Mr. GEKAS] will be recognized for 10 minutes.

The Chair recognizes the gentleman from California [Mr. EDWARDS].

Mr. EDWARDS of California. Mr. Chairman, I yield myself such time as I may consume.

Mr. Chairman, these four amendments address some of the ambiguities that I see in the Gekas amendment.

Amendment No. 1 specifies additional mitigating factors that a jury may consider. The jury can impose the