**EXECUTION SCHEDULED FOR JANUARY 14, 2021**

No. 21-2

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

_____

IN RE COREY JOHNSON,

**Movant.**

_____

### CAPITAL CASE

**EMERGENCY MOTION OF COREY JOHNSON FOR STAY OF EXECUTION PENDING CONSIDERATION AND DISPOSITION OF MOTION FOR AUTHORIZATION AND UNDERLYING MOTION PURSUANT TO 28 U.S.C. § 2255 RAISING CLAIM OF INELIGIBILITY TO BE EXECUTED UNDER THE EIGHTH AMENDMENT**

_____

Donald P. Salzman
Jonathan Marcus
David E. Carney
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 371-7983
Fax: (202) 661-9063
Email: donald.salzman@skadden.com

*Counsel for Corey Johnson*

Corey Johnson, a person with intellectual disability, respectfully requests a stay of execution pending this Court's consideration and disposition of his Motion for Authorization to File Motion Pursuant to 28 U.S.C. § 2255 Raising Claim of Ineligibility to Be Executed Under the Eighth Amendment (the "Motion for Authorization" or "MFA") and the underlying Motion Pursuant to 28 U.S.C. § 2255 Raising Claims of Ineligibility to Be Executed Under the Eighth Amendment (the "2255 Motion" or "MFA Attach.").[1] Absent a stay, Mr. Johnson will be executed on January 14, 2021, in violation of the law.

## INTRODUCTION

Corey Johnson's trial was one of the first federal capital trials in the modern era and the very first where mental retardation was at issue. He was tried before *Atkins*[2] was decided and well before any federal standards or procedures were developed. The testimony in 1993 that Mr. Johnson was not a person with intellectual disability was reached without the current understanding in the medical and legal community of what constitutes intellectual disability and without an

---

[1] The government was notified of the intended filing of this motion and intends to oppose the relief requested.

[2] *Atkins v. Virginia*, 536 U.S. 304 (2002), announced that the Eighth Amendment barred the execution of those with intellectual disability. The federal capital sentencing statute has had a similar bar since 1988. Mr. Johnson was tried in 1993.

accurate or complete picture of his intellectual functioning, based on, among other evidence, valid, properly adjusted IQ scores.

Mr. Johnson is the only remaining intellectually disabled person under a federal death sentence who was tried before *Atkins*. But the lack of process in Mr. Johnson's case is unique even compared to federal capital cases tried after *Atkins*. For example, unlike another federal inmate who unsuccessfully asserted a claim of intellectual disability proximate to his execution date, Mr. Johnson has never had an evidentiary hearing on the full record of his intellectual disability. Almost a decade after *Atkins*, the other federal inmate presented five days of evidence on his intellectual disability claim—at an evidentiary hearing involving more than 20 witnesses, including four experts—before his § 2255 claim was rejected in more than 50 pages of analysis by the district court. *Bourgeois v. Watson*, 977 F.3d 620, 625-27 (7th Cir. 2020), *cert. denied*, 141 S. Ct. 507 (2020). In stark contrast, Mr. Johnson has never had a single court analyze his experts' opinion that he has intellectual disability to determine whether or not he is categorically barred from execution.

Advancement in science and subsequent factual discoveries prove Mr. Johnson's disability. We now know that Corey Johnson had three childhood IQ scores placing him in the range of a person with intellectual disability. He has significant, well-documented, deficits in virtually every aspect of daily living,

including nearly all skills necessary for independent living. He has been adjudged intellectually disabled by three nationally-renowned experts in the field. Were he to have been tried today using reliable evidence and pursuant to contemporary federal legal standards and science, there is little doubt he would be deemed ineligible for the death penalty. Yet despite the Eighth Amendment prohibition on executing the intellectually disabled, he has remained on death row because no court or jury has ever heard the evidence establishing his infirmity, evidence that was largely unavailable to him during his trial, appeal, and post-conviction proceedings.

With his Motion for Authorization. Mr. Johnson has submitted a proposed successive 2255 Motion raising two distinct claims: (1) he is a person with intellectual disability and is, therefore, entitled to *Atkins* relief; and (2) developments in science, as well the discovery of new facts, have rendered his death sentence unreliable in violation of the Eighth Amendment. As his Motion for Authorization explains, both of these claims meet the standards required by 28 U.S.C. § 2255(h).

For these reasons, Mr. Johnson respectfully requests that this Court stay his execution scheduled for January 14, 2021, to allow full consideration of his authorization request, and to allow the district court to consider his claims that his

3

execution would violate the Eighth Amendment, because he is intellectually disabled and because his death sentence rests on discredited scientific opinion.

## ARGUMENT

Courts in the Fourth Circuit treat a motion to stay an execution as a request for a preliminary injunction. *See, e.g.*, *Prieto v. Clarke*, No. 15CV587, 2015 WL 5793903 (E.D. Va. Oct. 1, 2015). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Glossip v. Gross*, 576 U.S. 862, 876 (2015) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). As to the first of these factors, the Supreme Court has explained that a stay applicant must make "a strong showing that he is likely to succeed on the merits" and that "[t]he first two factors . . . are the most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009).

## I.   COREY JOHNSON HAS A STRONG LIKELIHOOD OF PREVAILING ON HIS MOTION FOR AUTHORIZATION

Because Mr. Johnson is seeking a stay based on his Motion for Authorization, he must show a likelihood he will prevail on that Motion, *i.e.,* that he has made a showing in this Court sufficient for a grant of successor authorization. To do this, he must show he has likely made "a prima facie showing" that the he satisfies the requirements of § 2255(h). *United States v.*

4

*MacDonald*, 641 F.3d 596, 609 (4th Cir. 2011). This review "may entail a cursory glance at the merits," *In re Williams*, 330 F.3d 277, 282 (4th Cir. 2003), but is primarily a determination of whether the pleading presents "sufficient allegations of fact together with some documentation that would 'warrant a fuller exploration in the district court.'" *In re McDonald*, 514 F.3d 539, 544 (6th Cir. 2008) (citation omitted). Because this is the standard at the authorization stage, a movant need not prove at this point that he would win. *In re Williams*, 330 F.3d at 282.

Thus, in order show a likelihood he will succeed on the merits, sufficient to obtain a stay, Mr. Johnson needs to show that he is likely to meet this *prima facie* standard for each of the claims asserted. Mr. Johnson can meet this burden.

**A.    Mr. Johnson Has a Strong Likelihood of Prevailing on His Claim That His Execution Would Violate the Eighth Amendment Because He Is a Person with Intellectual Disability**

In his Motion for Authorization and its accompanying 2255 Motion, Mr. Johnson presents a comprehensive picture, based on substantial evidence, that he is a person with intellectual disability. He meets "the generally accepted, uncontroversial intellectual-disability diagnostic definition, which identifies three core elements": (1) significant intellectual-functioning deficits, as represented by childhood IQ scores of 75 or below; (2) significant adaptive deficits; and (3) the onset of these deficits while still a minor. *Moore v. Texas*, 137 S. Ct. 1039, 1042, 1045 (quoting *Hall v. Florida*, 572 U.S. 701, 710 (2014)), 1048 (2017); *see also*

MFA Attach. Ex. 75 (AAIDD-11); MFA Attach. Ex. 77 (DSM-5).[3]  Three

renowned experts in intellectual disability have each concluded that Mr. Johnson is

a person with intellectual disability based on a broad universe of information,

including test results and observations documented during Mr. Johnson's

childhood. MFA at 5-12.[4] These expert opinions and the evidence from which they

---

[3] These are the standards that district courts within the Fourth Circuit have adopted in federal capital cases, *e.g.*, *United States v. Salad*, 959 F. Supp. 2d 865, 868-69 (E.D. Va. 2013); *United States v. Davis*, 611 F. Supp. 2d 472, 475 (D. Md. 2009), as have other district courts around the country, *e.g.*, *United States v. Hardy*, 762 F. Supp. 2d 849, 856 (E.D. La. 2010); *United States v. Shields*, No. 04-20254, 2009 WL 10714661, at *1-2 (W.D. Tenn. May 11, 2009); *United States v. Smith*, 790 F. Supp. 2d 482, 485 (E.D. La. 2011).

[4] Each expert has over 40 years of experience and all have devoted their professional careers to researching and evaluating individuals with intellectual disability.

Dr. Olley holds a Ph.D. in psychology with an emphasis in intellectual disability and has been licensed to practice psychology since 1974. He has held academic positions at the University of Massachusetts at Amherst and University of North Carolina at Chapel Hill. He is widely published and has held leadership positions in psychology and intellectual disability associations. For a complete recitation of his qualifications, see MFA Attach. Ex. 2(a).

Dr. Reschly holds a Ph.D. in school psychology and special education. He has held academic posts at Iowa State University and Vanderbilt University. He is widely published, has been widely cited in academic literature, has been accepted as an expert witness in federal courts, and has held leadership positions in national associations. For a complete recitation of his qualifications, see MFA Attach. Ex. 1 (a).

Dr. Siperstein holds a Ph.D. in psychology and is a licensed psychologist. He has held academic posts at the University of Massachusetts at Boston and is widely published on the topic of children with disabilities. He is the founder and director

*(cont'd)*

are derived, as summarized below, make clear that Mr. Johnson has made a *prima facie* case that he satisfies the three prongs of an intellectual disability diagnosis.

*Significant deficits in intellectual functioning.* Mr. Johnson satisfies the first prong of an intellectual disability diagnosis with four valid and reliable full-scale IQ scores within the presumptive range for intellectual disability. MFA at 5-7. These include four scores of 75 or below, three from tests he took at ages 8, 12 and 16. *Id.* at 7; *see, e.g., United States v. Wilson*, 170 F. Supp. 3d 347, 351 (E.D.N.Y. 2016).

*Significant deficits in adaptive functioning.* Mr. Johnson meets the diagnostic criterion for intellectual disability for adaptive deficits, as well. In his Motion for Authorization and 2255 Motion, Mr. Johnson's extensive and well-documented history of deficits in all three of these domains is detailed, including, in part, his inability to read or write beyond a third grade level, tell time, or change money—just a sliver of examples of the broad deficits documented in his childhood records and analyzed in his experts' reports. The pleadings highlight immaturity, gullibility, and his inability to care or fend for himself—an observation

---

of the Center for Social Development and Education at the University of Massachusetts at Boston and has served as associate editor of the *American Journal of Mental Retardation* and editor of the Research Monograph Series of the American Association on Mental Retardation. For a complete recitation of his qualifications, see MFA Attach. Ex. 3(a).

and concern shared by counselors, teachers, family members and friends. MFA at 7-12.

*Onset before the age of 18.* Mr. Johnson has pled and documented that his limitations all had their onset during his childhood. *Id.* at 12.

*     *     *

Mr. Johnson has also established that he was unable to avail himself of the protections of Supreme Court's *Atkins* decision because his case was tried before it was issued and his post-conviction litigation was completed before its application became feasible. Mr. Johnson's claim of intellectual disability was rejected on the basis of an IQ score of 77 which was, at the time his case was litigated, believed (by its administrator and others) to completely preclude an intellectual disability diagnosis. Over the years, federal capital case law developed substantive criteria for determining who was entitled to *Atkins* relief and the standards clarified by scientific developments were published in 2013 in the DSM-5. According to both, there can be little question now that Corey Johnson is intellectually disabled. Although federal standards under *Atkins*, informed by advances in science had direct implications for how Mr. Johnson would be diagnosed, relief was not available to him because his legal proceedings were complete. As Mr. Johnson demonstrates in his authorization request, the unfortunate and unique timing of his case meant that the *Atkins* rule was previously unavailable to him. In light of

8

subsequent changes, he can now meet the successor standards of 28 U.S.C. § 2255(h)(2).

Mr. Johnson has made out a *prima facie* case for the first claim in his Motion for Authorization, and there is a strong likelihood he will succeed in obtaining authorization on this claim.[5]

### B. Mr. Johnson Has a Strong Likelihood of Prevailing on His Claim That His Death Sentence Is Based on Discredited Science, in Violation of the Eighth Amendment's Reliability Guarantee

Mr. Johnson has also made a sufficient showing of the *prima facie* elements that his death sentence is based on discredited science and missing evidence to prevail on his Motion for Authorization. He, therefore, also meets the standards to obtain a stay, pending this Court's deliberation of that Motion.

Specifically, Mr. Johnson has pled the legal basis for his claim, that the Eighth Amendment requires "reliability in the determination that death is the appropriate punishment." *Johnson v. Mississippi*, 486 U.S. 578, 584 (1988) (quoting *Gardner v. Florida*, 430 U.S. 349, 363-64 (1977) (White, J., concurring in judgment) (quoting *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976) (plurality opinion))). A death sentence based on "evidence that has been revealed

---

[5] Although he is not required to prove his likelihood of success at proving his ultimate § 2255 claim in order to meet the stay standard, the extensive evidence of Mr. Johnson's disability, documented from an early age, laid out in his 2255 Motion, provide a strong showing that he is likely to prevail on his underlying claim, as well.

9

to be materially inaccurate" and the use of which is prejudicial, violates the Eighth Amendment's reliability guarantee. *Johnson v. Mississippi*, 486 U.S. at 590. Moreover, testimony based on science later determined to be inaccurate—like that introduced to Mr. Johnson's capital jury—renders the sentencing decision based on it unreliable. *Lee v. Glunt*, 667 F.3d 397, 407 (3d Cir. 2012) ("[T]he testimony was premised on unreliable science and was therefore itself unreliable" under fundamental due process principles).

Mr. Johnson has also pled sufficient factual allegations to establish a *prima facie* case demonstrating that his death sentence is unreliable because it is predicated on invalidated science; testimony based on that invalid science; and an opinion from a psychologist who was not an expert in intellectual disability, reached without benefit of a full or accurate record of Mr. Johnson's IQ testing.

As the authorization request and the 2255 Motion explain, the jury was informed by counsel that Mr. Johnson was *not* mentally retarded. MFA at 14-15, 36. Trial psychologist Dr. Dewey Cornell testified that Mr. Johnson did not satisfy a diagnosis of mental retardation because, on an IQ test Dr. Cornell had administered, Mr. Johnson had scored 77, "just above the level of mental retardation," "two points above that." MFA Attach. Ex. 7 (2/10/93 Trial Tr. 3691-92).

Dr. Cornell's testimony has proven materially inaccurate. Developments in the scientific understanding of intellectual disability have since invalidated this testimony in myriad ways. The score of 77 was not adjusted for the Flynn Effect, a phenomenon accepted by modern scientific consensus that older IQ tests reflect higher-than-actual IQ scores. MFA at 6 & n.7, 17 & n.21, & 28-30. Under currently accepted medical standards, this score was actually a 73, well within the range of intellectual disability.

Nor did Dr. Cornell administer any standardized adaptive behavior instruments, now considered an important diagnostic tool for retrospective determinations of intellectual disability. The use of objective, standardized instruments to perform *retrospective* assessments of adaptive functioning was unusual at the time of his trial. Critically, they were not used retrospectively to assess intellectual disability for purposes of *capital punishments proceedings* until long after his trial, and thus their retrospective use was unavailable at the time of Mr. Johnson's trial.[6]

---

[6] Long after Mr. Johnson's trial and original §2255 motion, Dr. Olley administered standardized adaptive behavior instruments to three people who knew Corey Johnson well when he was a child, in addition to conducting numerous interviews. These assessments support the diagnosis of Mr. Johnson as a person with intellectual disability. MFA at 5, 38.

Lastly, the authorization request and 2255 Motion notes that Dr. Cornell was missing two critical pieces of Mr. Johnson's record: an IQ test conducted when Mr. Johnson was eight years old, which yielded a Flynn-adjusted score of 72, and an IQ test conducted when he was 12 which yielded a Flynn-adjusted score of 75. These newly-discovered scores would have made obvious that the IQ score of 77 (which featured so prominently in precluding intellectual disability at trial) was the outlier. Indeed, it would have shown that, contrary to what the jury was told, *every one of Mr. Johnson's valid IQ scores obtained prior the age of 18 was in the range of intellectual disability.*

As he has pled in his Motion for Authorization, Dr. Cornell's unreliable, uninformed testimony was instrumental at trial at excluding from the jury's consideration any possibility that Mr. Johnson was intellectually disabled. His testimony, therefore, precluded even the possibility that Mr. Johnson would be deemed intellectually disabled and categorically ineligible for a death sentence. *Johnson v. Mississippi*, 486 U.S. at 586 (finding even the "possibility" that the invalid predicate "would be 'decisive'" sufficiently prejudicial (citation omitted)). As his Motion for Authorization makes clear, these facts are sufficient to establish a *prima facie* showing that this claim should be authorized pursuant to 28 U.S.C. § 2255(h)(1).

Thus, Mr. Johnson has shown a likelihood that he will succeed on the second claim in his Motion for Authorization, as well.

## II.    MR. JOHNSON FACES IRREPARABLE HARM ABSENT A STAY

The measure of irreparable harm is whether, in the absence of immediate relief, any court in law or equity, could reverse the harm caused by moving forward. *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 218 (4th Cir. 2019) ("[I]rreparable harm is often suffered when . . . the district court cannot remedy the injury following a final determination on the merits." (alterations in original) (quoting *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001))). "In cases involving the death penalty when an execution date has been set, as here, it is a certainty that irreparable harm will result if the court of appeals' decision is not stayed." *Beaver v. Netherland*, 101 F.3d 977, 979 (4th Cir. 1996); *see also Oken v. Sizer*, 321 F. Supp. 2d 658, 666 (D. Md. 2004) ("[T]he irreparable harm to one seeking a stay of execution is ordinarily obvious."); *Battaglia v. Stephens*, 824 F.3d 470, 475 (5th Cir. 2016) ("[I]n a capital case, the possibility of irreparable injury weighs heavily in the movant's favor." (citation omitted)). Indeed, no later court order could undo Mr. Johnson's execution.

13

Mr. Johnson's execution date has been set and is imminent. Without a stay to allow this Court to consider his arguments, Mr. Johnson will suffer irreparable harm.

## III.     THE BALANCE OF EQUITIES TIPS IN FAVOR OF A STAY.

Mr. Johnson is requesting a stay long enough to have this Court consider his Motion for Authorization, a determination that, by statute, should be concluded within 30 days. Although the government normally has a "strong interest" in "proceeding with its judgment," *Nelson,* 541 U.S. at 649-50 (citation omitted), no such interest exists here, where the government itself has caused a decade-long delay in bringing Mr. Johnson's case to this point. The government initially set an execution date for Mr. Johnson in 2005 but was unable to carry the execution out at that time because of flaws in its execution protocol. Tasked by the courts with the job of replacing its flawed protocol, the government then passed eight years, from 2011 to 2019, without any execution protocol at all.[7] The government has no basis to argue that now, a delay of at most 30 days for this Court to complete its initial review would infringe its interests, particularly when Mr. Johnson can make a very strong showing that he is ineligible for execution.

---

[7] Mem. Op. at 14, *In re the Fed. Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-145-TSC (D.D.C. Nov. 20, 2019), ECF No. 50.

## IV.    THE PUBLIC INTEREST FAVORS A STAY.

The public's interest in ensuring that intellectually disabled persons are not executed has been expressed through two separate acts of Congress—21 U.S.C. § 848(*l*) (repealed) and 18 U.S.C. § 3596(c)—and by Supreme Court cases that have continued to refine the contours of the constitutional prohibition on executing the intellectually disabled so as to ensure that courts and deliberative bodies do not impose restrictive definitions that might exclude people entitled to the Eighth Amendment's protection. *E.g.*, *Atkins*, 536 U.S. at 320; *Hall*, 572 U.S. at 710; *Moore*, 137 S. Ct. at 1050. *Atkins* itself is based on the fundamental premise often expressed by the Supreme Court that the ultimate penalty be reserved only for the most morally culpable offenders and that persons with intellectual disability do not belong in that category.

It is, therefore, in the public's interest that the government not be permitted to execute Mr. Johnson without giving him this one opportunity to demonstrate, based on reliable science and a full record, that he is a person with an intellectual disability.

## CONCLUSION

For the foregoing reasons, this Court should grant Mr. Johnson a stay of execution pending consideration of his Motion for Authorization and 2255 Motion.

Dated: January 8, 2021                    Respectfully submitted,


/s/ Donald P. Salzman
Donald P. Salzman
Jonathan Marcus
David E. Carney
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 371-7983
Fax: (202) 661-9063
Email: donald.salzman@skadden.com

*Counsel for Corey Johnson*

## **CERTIFICATE OF COMPLIANCE**

1.      This motion contains 3580 words, excluding the parts of the motion

exempted from the word count by Fed. R. App. P. Rule 27(d)(2) and Rule 32(f).

2.      This motion complies with the font, spacing, and type size requirements set

forth in Fed. R. App. P. Rule 32(a)(5).

/s/ Donald P. Salzman

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of January 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send notification of such filing to all parties and counsel included on the Court's Electronic Mail notice list.

/s/ Donald P. Salzman
Donald P. Salzman
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 371-7983
Fax: (202) 661-9063
Email: donald.salzman@skadden.com